```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
```

ALEXANDER MOLOZANOV,

                        Plaintiff,

                        **MEMORANDUM AND ORDER**

     - against -

                        05 Civ. 5270 (NRB)

QUANTUM TELECOMMUNICATIONS
LIMITED, METROSVYAZ LIMITED and
ANTHONY N. GEORGIOU,

                        Defendants.

```
----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Alexander Molozanov ("plaintiff" or "Molozanov"), a United States citizen who resides in New York, has brought this diversity action against Quantum Telecommunications Limited ("Quantum"), a corporation formed under the laws of the Cayman Islands and also located therein; Metrosvyaz Limited ("Metro"), a corporation formed under the laws of Cyprus with offices in Moscow, London, and New York City; and Anthony N. Georgiou ("Georgiou"), a citizen of the United Kingdom who resides in New York (collectively, "defendants"). Plaintiff alleges that defendants knowingly made and published to third parties false, disparaging statements about him which impugned his integrity. Defendant Quantum now moves to dismiss the action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the reasons set forth below, Quantum's motion is granted.

## BACKGROUND[1]

Plaintiff asserts that he is a successful businessman with a "sterling reputation" who works in the telecommunications industry and who owns and operates several telecommunications companies in both the United States and in Russia. Compl. ¶¶ 2-3, 10. This suit arises out of a dispute between plaintiff and Georgiou involving Metro, in which both men have an interest.[2] The gravamen of plaintiff's complaint is that Georgiou, and through his control, Metro and Quantum, have disseminated false and defamatory statements to influential people within the telecommunications industry in an effort to force plaintiff out of Metro and to dissuade others from doing business with him. Compl. ¶ 2.

**The Metro Dispute**

Metro is a telecommunications company that operates Code Division Multiple Access ("CDMA") wireless telecommunications

---

[1] The following facts are drawn from plaintiff's complaint and affidavits submitted by both parties and, as is appropriate when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(2), are construed in the light most favorable to plaintiff. See Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co., No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001).

[2] Plaintiff is an indirect shareholder, the chief operating officer, and a member of the board of directors of Metro. He also serves on the boards of all of Metro's subsidiaries and serves as the chairman of the boards of three of these subsidiaries. Id. at ¶ 3. Plaintiff alleges that Georgiou is an indirect shareholder, the chairman of the board, and chief executive officer of Metro. Id. at ¶ 4. Defendants deny that Georgiou continues to have any interest in Metro. Def. Reply at 7.

technology and services throughout Russia. Id. at ¶ 5. It was established in August 1998 through a joint venture agreement between TASS-Telecom, in which plaintiff has an interest, and Quantum, of which Georgiou was the sole director and over which plaintiff alleges he still exercises complete dominion and control.[3] Id. at ¶¶ 4, 6, 16-17. In accordance with the joint venture agreement, TASS-Telecom and Quantum each held fifty percent of Metro's shares. Id. at ¶ 17. Also in keeping with the joint venture agreement, TASS-Telecom eventually assigned its rights to Teletal Limited ("Teletal"), a Cypriot company, which TASS-Telecom had formed and in which it was a majority shareholder.[4]

In December 2001, Qualcomm, Inc. ("Qualcomm"), a leading provider of digital wireless communications products, technologies, and services, also became a shareholder of Metro. Id. at ¶ 18. Although the respective ownership interests in Metro held by Teletal, Quantum, and Qualcomm is disputed, plaintiff alleges that Georgiou, individually and through Quantum, has been exercising control over Metro. Id. at ¶ 19.

---

[3] Plaintiff also alleges that Georgiou intermingles Quantum funds with his personal funds and that he is an agent for both Metro and Quantum and transacts business on their behalf in New York. Id. at ¶¶ 4, 6. As discussed below, Quantum has provided evidence which refutes many of these allegations.

[4] Plaintiff is a member and chairman of Teletal's board of directors. Id. at ¶ 16.

Difficulties between plaintiff and Georgiou first arose on or about November 27, 2003, when Teletal, acting through plaintiff, filed a winding-up petition against Metro in the District Court of Nicosia, Cyprus. Id. at ¶ 20. This petition was based on allegations that: (a) Georgiou and Quantum used Metro funds to make payments for non-corporate purposes; (b) Georgiou forged the signature of a Metro board member on documents used to authorize such payments; (c) Georgiou and Quantum failed to prepare Metro's financial statements on a yearly basis as required under law, and also failed to present such information at Metro's annual meeting; and (d) Georgiou and Quantum failed to provide plaintiff and another director with financial information they had requested about Metro. Id. The parties eventually reached a settlement agreement on or about March 16, 2004 ("March 2004 Settlement"), in which they agreed to re-establish the equality between Teletal and Quantum with respect to management over Metro and entitlement to economic benefits from the business.[5] Id. at ¶ 21. The petition to wind up the business was then withdrawn upon Georgiou's written representation that all the prerequisites of the March 2004 Settlement had been satisfied. Id. at ¶ 22. Subsequently,

---

[5] The March 2004 Settlement states that it "shall be governed by the laws of the State of New York and of the United States." Affidavit of Alexander Molozanov, dated October 20, 2005 ("Molozanov Aff."), Ex. 2.

4

plaintiff learned of information which led him to conclude that Georgiou and Quantum had failed to comply with the provisions of the March 2004 Settlement.  Id. at ¶ 23.  As a result, on November 18, 2004, Teletal and plaintiff re-filed the petition to wind up Metro.  Id.

**Defendants' Statements**

Plaintiff alleges that, in an effort to force him out of Metro and to retaliate for his legal actions, defendants have "set out to destroy [his] reputation and his ability to earn a livelihood in the telecommunications business."  Id. at ¶ 24. In order to do so, plaintiff asserts that Georgiou, presumably acting on behalf of Metro and Quantum, has knowingly made false statements impugning plaintiff's integrity and disparaging him within the industry.  These statements have been made both to influential businessmen within the industry and to media outlets.  Id.

Specifically, plaintiff alleges that Georgiou made three different statements.  First, after being informed by plaintiff that he intended to re-file his winding-up petition, on November 17, 2004, Georgiou wrote and sent a letter to Vladimir Romanovic Ivanov, then the CEO of TASS-Telecom and also one of the most respected and influential figures in the Russian telecommunications industry.  Id. at ¶¶ 25-26.  In this letter, Georgiou made various accusations against plaintiff, including

5

that plaintiff had "certainly stolen many millions" from Metro. Id. at ¶ 27. The letter was written on Metro letterhead, and plaintiff alleges that it was sent from Metro's New York office. Id. at ¶ 30.

Second, on the same day, Georgiou allegedly wrote and sent a letter to Vitaly Nikitich Ignatenko, Chairman of the ITAR-TASS news agency in Moscow. Id. at ¶ 33. In this letter, Georgiou made substantially the same accusations, writing that plaintiff "has never invested one penny, but has taken out, both legally and illegally, many millions of dollars" from Metro. Id. at ¶ 34. Plaintiff alleges that this letter also was written on Metro letterhead and was sent from Metro's New York office. Id. at ¶ 37.

Third, plaintiff alleges that on May 17, 2005, Georgiou, on behalf of himself and Quantum, made a statement in the CommNews publication that "Quantum Telecomm and I have lawsuits in three jurisdictions against Molozanov and Teletal. We intend to show that Molozanov is a thief, [sic] he stole large sums of money from Metrosvyaz." Id. at ¶ 39. Plaintiff alleges that this statement was made with the knowledge that it would be disseminated to internet news outlets and online internet publications within the industry and would be accessible to the

general public on the internet.[6]  Id. at 40.  As a result of all three statements, plaintiff alleges that both his reputation and his ability to do business within the telecommunications industry have been harmed.  Id. at ¶ 43.  Only the May 17, 2005 statement is relevant for purposes of this motion.

**Quantum**

Quantum is engaged in the business of promoting CDMA technology in Russia.  It is incorporated in the Cayman Islands, where it maintains its sole office.  None of its business is conducted in New York or the U.S., nor does it derive any revenue or maintain any bank account in either New York or any other state.  See Declaration of Oleg Budanstev dated September 6, 2005 ("Budanstev Decl.") ¶¶ 2, 3, 9, 10.  In June 2004, Tiller International ("Tiller"), which was Georgiou's investment vehicle for his interest in Quantum, sold its 100% interest in Quantum to Delta Max Limited ("Delta Max"), a Bulgarian Corporation.  Pl. Opp. at 8.  Under the terms of this sale, Tiller and Delta Max agreed that Georgiou would continue to manage Quantum's business and also would be entitled to receive proceeds from Quantum.  Molozanov Aff., Ex. 2.  However, pursuant to an October 19, 2004 agreement ("the Quantum Agreement") Delta Max in turn sold 70% of its interest in

---

[6] Plaintiff alleges that the statement was in fact disseminated to several outlets, including Prime-Tass news agency, Sotovik, and Ukraine Mobile Publication.  Id. at ¶ 40.

7

Quantum to Avenue Limited ("Avenue"), a British Virgin Islands corporation.[7] Id. According to Quantum, Georgiou has not held any ownership interest in Quantum since June 2004, and he has not served as an employee or agent of Quantum since October 26, 2004. Budanstev Decl. ¶¶ 14, 15. He also has never conducted any business on behalf of Quantum in New York, either as a director or officer prior to November 2004, or in any capacity since that date. Id. at ¶ 16.

Quantum now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff argues that general jurisdiction exists here because Quantum is merely Georgiou's alter ego. Alternatively, plaintiff asserts that long arm jurisdiction would properly be exercised against Quantum because his cause of action arises out of an in-state business transaction. For the reasons discussed below, we reject plaintiff's arguments and grant Quantum's motion to dismiss.

## DISCUSSION

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that jurisdiction exists over the defendant. See Distefano v. Carozzi North America Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,

---

[7] Quantum asserts that Georgiou does not hold any ownership interest in either Avenue or Delta Max. Budanstev Decl. ¶ 17. Plaintiff has not provided any evidence to the contrary.

8

171 F.3d 779, 784 (2d Cir. 1999)). Prior to discovery, plaintiff must only make a prima facie showing of jurisdiction to defeat a motion to dismiss. See Bank Brussels Lambert, 171 F.3d at 784. "Because [a] Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 2d 175, 178 n. 2 (S.D.N.Y. 1995) (quoting John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co., Ltd., No. 91 Civ. 3644 (CES), 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992)) (quotations omitted). The court must assume the truth of all allegations in the complaint and must resolve all doubts in plaintiff's favor "notwithstanding a controverting presentation by the moving party." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993) (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985)). Keeping these standards in mind, we examine whether New York state law would allow for the exercise of either general or specific personal jurisdiction in this case.

**I. General Personal Jurisdiction**

Under New York Civil Practice Law and Rules ("CPLR") § 301, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."

CPLR § 301. Plaintiff argues that because this Court has jurisdiction over Georgiou, it also has jurisdiction over Quantum, which plaintiff alleges is merely Georgiou's alter ego. See Pl. Opp. at 11.

Although under New York law jurisdiction over a party necessarily would entail jurisdiction over its alter ego, see Network Enterprises, Inc. v. APBA Offshore Productions, Inc., No. 01 Civ. 11765 (CSH), 2003 WL 124521, at *3, n. 3 (S.D.N.Y. Jan. 15, 2003); Packer v. TDI Systems, Inc., 959 F. Supp. 192, 203 (S.D.N.Y. 1997), plaintiff fails to establish that Quantum was so dominated by Georgiou that it became "a mere instrumentality." Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 138 (2d Cir. 1991) (citation omitted). Indeed, the evidence submitted by both parties suggests the contrary.

Plaintiff asserts that Quantum's alter ego status is evidenced by Georgiou's representation in the March 2004 Settlement, which addressed the involvement of Teletal and Quantum in Metro, that his signature bound Quantum; by Georgiou's continued management of Quantum under terms of the Quantum Agreement; by Georgiou's reference to "Quantum Telecomm and I" in his May 17, 2005 statement; and by plaintiff's statement in his affidavit that Georgiou continues to act on

behalf of Quantum in matters relating to Metro.  See Pl. Opp. at 11.

While Georgiou did represent in the March 2004 Settlement that his signature bound Quantum, the Quantum Agreement, which purportedly divested Georgiou of any interest in Quantum, was signed after this date.  Similarly, while the Quantum Agreement states that Georgiou would continue to manage Quantum after the sale to Delta Max, there is no indication, nor does plaintiff offer any evidence, that this arrangement continued once Delta Max sold the majority of its interest to Avenue.  If anything, the Quantum Agreement suggests that any ownership interest which Georgiou held in Quantum effectively ended in June 2004. Finally, Georgiou's reference to Quantum in his May 17, 2005 statement fails to advance plaintiff's argument, as it does not in any way suggest that Quantum was merely Georgiou's alter ego. Ultimately, even if plaintiff's assertions were accepted they still would fall far short of establishing that Quantum was so dominated by Georgiou that it became a mere instrumentality.

Absent any evidentiary support, plaintiff is left to rely solely upon his unsupported allegations that Georgiou intermingles Quantum's funds with his own, and despite the fact that the Quantum Agreement "appears to have been arranged for the purpose of making it appear that Georgiou no longer dominates and controls Quantum," Georgiou does in fact continue

to dominate Quantum. Such conclusory allegations are insufficient. See In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (noting that "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard"). Therefore, we conclude that there is no personal jurisdiction over Quantum pursuant to CPLR § 301.[8]

**II. Specific Personal Jurisdiction**

Plaintiff also argues that Quantum is subject to specific jurisdiction pursuant to CPLR § 302(a)(1). Determination of personal jurisdiction under CPLR § 302, which is New York's long-arm statute, is a two-step process. See Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). First, we must examine whether personal jurisdiction is appropriate under CPLR § 302. See id.; PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). Second, if the exercise of jurisdiction under the long-arm statute is appropriate, then we must consider whether such exercise would comport with the requirements of due

---

[8] Although courts have interpreted CPLR § 301 also to include non-domiciliary defendants who engage in sufficiently continuous and systematic business in New York, see Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33-34 (N.Y. 1990), this exception would not apply to Quantum, which has not maintained such a presence.

12

process.[9] See Bensusan, 126 F.3d at 27; Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

Under CPLR § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state" provided that the plaintiff's cause of action arises from these activities. CPLR § 302(a)(1). As stated by the New York Court of Appeals, jurisdiction is appropriate "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (N.Y. 1988); see Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983) (noting that there must be some "articulable nexus between the business transacted and the cause of action sued upon") (quoting McGowan v. Smith, 52 N.Y.2d 268, 272 (N.Y. 1981)). This requirement has been interpreted "very narrowly." Graphic Controls Corp. v. Utah Medical Prods., Inc., 149 F.3d 1382, 1386 (2d Cir. 1998).

Even assuming that entry into the March 2004 Settlement, which was prepared in New York, constituted a transaction of business by Quantum, plaintiff fails to establish a sufficient nexus between this transaction and the alleged defamatory

---

[9] Because a statutory basis for jurisdiction has not been established, we need not consider this second question.

13

statement.  While plaintiff argues that there is a sufficiently substantial relationship between the signing of the March 2004 Settlement and Georgiou's May 17, 2005 statement such that jurisdiction under CPLR § 302(a)(1) would be appropriate, we disagree.[10]

If plaintiff's cause of action arose directly from the March 2004 Settlement, for instance for a purported breach of the settlement agreement, then jurisdiction might be appropriate.  However, plaintiff's claim arises out of Georgiou's May 17, 2005 statement, which was made over a year after the March 2004 Settlement and after it had already been breached.  Indeed, plaintiff's cause of action would exist irrespective of whether the March 2004 Settlement had even been prepared in New York.  See Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 765 (2d Cir. 1983) (noting that plaintiff's cause of action would exist regardless of whether defendant's products had been sent to New York).  The most plaintiff can assert is that the May 17, 2005 statement was part of a larger "campaign" to defame him after the March 2004 Settlement had already been

---

[10] As noted previously, Quantum disputes that Georgiou was even in a position to speak on its behalf.  For purposes of this discussion, however, we need not address whether or not Georgiou was an agent of Quantum when he made the statement.

breached. This simply does not constitute the requisite nexus to assert jurisdiction under CPLR § 302(a)(1).[11]

**CONCLUSION**

For the reasons set forth above, Quantum's motion to dismiss is granted.

**IT IS SO ORDERED.**

Dated:  New York, New York
        April 6, 2006

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[11] Although in some instances a defendant's contacts with New York via the internet can provide a basis for jurisdiction under CPLR § 302(a)(1), see Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564-65 (S.D.N.Y. 2000), this would not hold true here, as this case involves at most the publishing of a statement on a passive website.

We also deny plaintiff's request for jurisdictional discovery in light of the fact that his jurisdictional allegations are both conclusory and legally insufficient. See Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998) (denying discovery where plaintiff made only "conclusory non-fact-specific jurisdictional allegations").

15

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff

David J. Eiseman, Esq.
Laura Sulem, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue, 35th Floor
New York, NY 10022

Counsel for Defendant Quantum Telecommunications Limited and Metrosvyaz Limited

Joseph P. Cyr, Esq.
Darcy L. O'Loughlin, Esq.
Lovells
900 Third Avenue, 16th Floor
New York, NY 10022

Counsel for Defendant Anthony Georgiou

Richard Cashman, Esq.
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY 10036